**In re Chrystal RODWELL, Debtor.**

**No. 06–21052.**

United States Bankruptcy Court, W.D. New York.

March 1, 2007.

---

7.  The position and principal arguments asserted by American Honda were addressed in *Peaslee.*

Peter D. Grubea, Buffalo, NY, for Debtor.

George M. Reiber, Rochester, NY, for Trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On June 21, 2006, Chrystal Rodwell (the "Debtor") filed a petition initiating a Chap-

ter 13 case, and George M. Reiber, Esq. (the "Trustee") was appointed as her Chapter 13 Trustee.

The Debtor filed an amended Chapter 13 Plan (the "Amended Plan") which provided, pursuant to that portion of Section 1325(a)(9) that has become known as the "Hanging Paragraph, that the claim of Americredit Financial Services, Inc." ("Americredit"), secured by a 2005 Dodge Ram (the "2005 Ram"), was to be treated as an allowed secured claim in the amount of $28,378.00. This amount represented the amount the Debtor believed was due on the "Retail Installment Contract" she entered into when she purchased the 2005 Ram, even though the Debtor's schedules indicated that she believed that the retail value of the 2005 Ram was only $17,000.00. The Amended Plan further provided that the allowed secured claim of $28,378.00 was to be paid with interest, in equal monthly installments through the Plan.[1]

On September 28, 2006, the Trustee filed a Motion (the "Valuation Motion") which requested that the Court, pursuant to Section 506(a)(1), determine that Americredit had an allowed secured claim for the $17,000.00 scheduled amount or retail value of the 2005 Ram and an unsecured claim for the balance of the Americredit Secured Claim. The Valuation Motion asserted that: (1) the Debtor purchased the 2005 Ram on June 14, 2005 for her personal use from Winter Park Dodge, Inc. ("Winter Park"), which was within 910 days of the filing of his petition; (2) in connection with her purchase, she traded in a 2004 Dodge Ram (the "2004 Ram"), which was valued at $16,200.00 on the Retail Installment Contract entered into by

---

1. On June 28, 2006, Americredit filed a secured claim (the "Americredit Secured Claim") in the amount of $28,324.21.

**618**

the parties[2]; (3) at the time she traded in the 2004 Ram, it was subject to a lien of $26,170.00; (4) the Retail Installment Contract itself indicated that there was at least $10,000.00 in negative equity in the 2004 Ram, and that a portion of that negative equity was rolled in and refinanced in connection with the purchase of the 2005 Ram because the Debtor paid over $30,000.00 after adjustments for the vehicle that had an initial cash price, as set out in the Retail Installment Contract, of approximately $27,000.00; (5) although the Retail Installment Contract granted the holder a security interest in the 2005 Ram for the entire amount financed, because the Americredit Secured Claim included rolled-in and refinanced debt, Americredit did not have a purchase money security interest for that portion of the debt, and, therefore, for all of the debt included in the Americredit Secured Claim, as specifically required by the Section 1325(a)(9) Hanging Paragraph; and (6) because Americredit had a purchase money security interest for only a portion and not all of the debt included in the Americredit Secured Claim, the exception set forth in the Section 1325(a)(9) Hanging Paragraph did not

apply, and the Americredit Secured Claim was subject to the cram-down and bifurcation provisions of Section 506(a)(1).[3]

On October 13, 2006, Americredit filed Opposition to the Valuation Motion.

The Trustee filed similar valuation motions in other Chapter 13 cases involving secured claims filed by a number of other motor vehicle financers (these creditors, along with Americredit, will be referred to collectively as the "Motor Vehicle Finance Group").[4]

The Court conducted hearings on October 18, 2006 and November 15, 2006 at which time it heard the oral arguments of the Trustee and attorneys for a number of the Motor Vehicle Finance Group, including the attorneys for Americredit.

On December 22, 2006, the Court issued a Decision & Order in *In re Peaslee*, 358 B.R. 545 (Bankr.W.D.N.Y.2006) (*"Peaslee "*). In *Peaslee*, a copy of which is attached, the Court found that Section 506(a)(1), rather than the Section 1325(a)(9) Hanging Paragraph, governs the treatment of the secured claim of a motor vehicle financer, even though the debtor has purchased a replacement motor

---

2. The Retail Installment Contract was later assigned to Americredit.

3. Section 506 provides, in part, that:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on

such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (2006).

4. The Trustee initially filed objections to confirmation in the cases where he believed that because of the roll-in and refinance of negative equity, the Section 1325(a)(9) Hanging Paragraph did not apply, even though the respective debtor's plan provided for treatment of the secured claim under the Section 1325(a)(9) Hanging Paragraph. It was at the Court's suggestion that the Trustee filed the valuation motions in order to insure that the respective members of the Motor Vehicle Finance Group received clear and detailed notice of the Trustee's position and so the motions could then be set down for consolidated oral arguments.

vehicle within 910 days of the filing of their petition for personal use, where: (1) it is shown that the secured claim includes amounts loaned to the debtor to pay off the debtor's negative equity in a trade-in vehicle, not to pay any part of the actual purchase price of the replacement vehicle, so that not all of the debt included in the secured claim is secured by a purchase money security interest; and (2) the Court, on all of the facts and circumstances presented in these refinancing of negative equity cases, in the exercise of its discretion, as specifically provided for by Section 9–103(h) of the New York Uniform Commercial Code, determined that a transformation rather than a dual status rule would be in the best interests of all of the parties and the Bankruptcy System.

On January 10, 2007, the Court issued a Decision & Order in *In re Jackson*, 358 B.R. 560 (Bankr.W.D.N.Y.2007) (*"Jackson"*). In *Jackson*, a copy of which is attached, ▮ the Court found that: (1) where the applicable retail installment contract did not itself indicate that negative equity had been refinanced, any interested party objecting to a motor vehicle financer's secured claim receiving treatment under that Section 1325(a)(9) Hanging Paragraph had the initial burden to demonstrate that the secured claim included debt that was not secured by a purchase money security interest; (2) the objecting party could utilize the appropriate NADA Guide value to meet their initial burden of proof as to the trade-in value of a trade-in vehicle, the retail value of a used replacement vehicle, or manufacturer's suggested retail price of a new replacement vehicle; (3) notwithstanding a determination by the

Court that an interested party using NADA Guide values may have met their initial burden of proof to demonstrate the refinancing of negative equity, so that a motor vehicle financer's secured claim included debt that was not secured by a purchase money security interest, the motor vehicle financer always retained the right to demonstrate that in fact no negative equity in the trade-in vehicle was refinanced and to request a hearing for the Court to make that determination; and (4) in the event that the Court determined that the allowed secured claim of a motor vehicle financer was to be treated under Section 506(a)(1), the motor vehicle financer always retained the right to dispute any alleged retail value for the vehicle in question, and to request a hearing for the Court to determine the actual retail value.[5]

### DISCUSSION

In this case, this Court finds that the Trustee has met his initial burden of proof to demonstrate to the Court's satisfaction that the two separate financial transactions evidenced by the applicable Retail Installment Contract included the separate transaction where Winter Park loaned the Debtor money to refinance the negative equity she had in the 2004 Ram for the following reasons:

1. The Retail Installment Contract itself indicated that there was over $10,000.00 in negative equity in the 2004 Ram and that the refinance by Winter Park of some of the negative equity resulted in the Debtor paying over $30,000.00 for the 2005 Ram

---

**5.** These findings, numbered (3) and (4), were primarily to address the Court's determinations in the ten other cases it had on reserve when *Peaslee* and *Jackson* were decided, including this case. *Jackson* also indicated that

in the future these refinancing of negative equity cases would be addressed in connection with objections to confirmation when any response by a motor vehicle financer should address whether it requests a hearing on negative equity or retail value.

that had an initial sale price of only approximately $27,000.00.

## CONCLUSION

Subject to the right of Americredit to request a hearing by March 12, 2007 on the issues of whether negative equity was refinanced or to determine the retail value of the 2005 Ram, for the reasons set forth in *Peaslee*[6] and *Jackson*, pursuant to Section 506(a)(1), Americredit shall have an allowed secured claim of $17,000.00, reduced by any payments received in the Rodwell Case, to be paid in equal monthly payments together with the applicable *Till* rate of interest, to be set forth in the Confirmation Order presented to the Court by the Trustee, and an unsecured claim for $11,324.00.

**IT IS SO ORDERED.**

6. The position and principal arguments asserted by Americredit were addressed in *Peaslee.*